UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ALBERT MURRAY,

        Plaintiff,

Case No. 1:11-cv-1045

Hon. Gordon J. Quist

v.

HANNA M. GUERNSEY, *et al.*,

        Defendants.

_____/

**REPORT AND RECOMMENDATION**

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. This matter is now before the court on defendant Hannah M. Guernsey's motion for summary judgment (docket no. 9).

**I.**    **Background**

The court previously summarized plaintiff's claims as follows:

Plaintiff is a prisoner incarcerated with the Michigan Department of Corrections (MDOC) and is housed at the Richard A. Handlon Correctional Facility (MTU). Plaintiff sues the following employees of MTU: Dental Assistant Hanna M. Guernsey, Dentist Gerald McDonnell and Acting Regional Dental Director Elizabeth Phillips.

In his pro se complaint, Plaintiff alleges that between March of 2010 and February 24, 2011, he repeatedly sent requests to the MTU dental clinic complaining about constant pain and the need for his teeth to be fixed. Defendant Guernsey was responsible for answering inmate health care request forms and scheduling dental appointments. Plaintiff contends that each of his requests was met with "snide indifference" by Defendant Guernsey. (Compl. ¶ 10, docket #1.) On January 24, 2011, Guernsey responded to a health care request regarding extreme pain and swelling in Plaintiff's teeth. She advised Plaintiff to purchase pain medication from the prison store, though Plaintiff alleges that the prison store does not stock pain medication.

> On February 9, 2011, Plaintiff was seen by Dentist McDonnell, who drilled out what was left of the tooth about which Plaintiff had been complaining because it had "almost completely rotted away." (Compl. ¶ 13.) Plaintiff alleges that McDonnell negligently failed to conduct even a "cursory examination" of Plaintiff's other teeth. (Id.) If he had, he would have seen that another tooth was beginning to rot.
>
> On February 25, Plaintiff received another answer from Guernsey regarding another health care request in which Plaintiff complained about pain and swelling in one of his teeth. Her reply stated, "'Scheduled as time permits.'" (Compl. ¶ 12.)
>
> On March 4, Defendant McDonnell surgically removed another one of Plaintiff's teeth, telling Plaintiff, "'That was quite a large hole in your tooth. I can see how it would have caused you pain.'" (Compl. ¶ 15.) Plaintiff contends that, absent McDonnell's prior negligence, there would not have been a large hole in Plaintiff's tooth.
>
> On March 31, Defendant Phillips summarized Plaintiff's treatment, stating, "Grievant[] has been on the restorative prophylaxis list. Grievant's[] dental prophylaxis was completed." (Compl. ¶ 16.)
>
> Plaintiff contends that Defendants denied him his right to due process and redress, in violation of his rights under the First and Fourteenth Amendments, and denied him adequate dental care, in violation of his rights under the Eighth Amendment, Article IV of the Michigan Constitution, and MICH. COMP. LAWS §§ 791.203, 791.206 and 750.337. Plaintiff seeks declaratory and injunctive relief as well as damages.

Opinion at pp. 1-3 (footnote omitted) (Nov. 17, 2011) (docket no. 6).

The court construed plaintiff's complaint as alleging an Eighth Amendment claim against defendants Guernsey, McDonnell and Phillip and a Fourteenth Amendment claim against defendant Phillips. Opinion at pp. 7-8. The court dismissed the federal claims alleged against defendants McDonnell and Phillips. *Id.* at pp. 8-9; Order for partial dismissal and partial service (Nov. 17, 2011) (docket no. 7). The court also dismissed the state law claims alleged against McDonnell and Phillips. *Id. See generally*, 28 U.S.C. § 1367(c) (authorizing district courts to

decline supplemental jurisdiction).    The complaint was served against the remaining defendant, Guernsey.[1]    Opinion at p. 9; Order for partial dismissal and partial service.

## II.    Defendant's motion for summary judgment

### A.    Legal Standard

Defendant has moved for summary judgment on various grounds, including failure to exhaust administrative remedies.  "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Rule 56 further provides that "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion by":

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the parties' burden of proof in deciding a motion for summary judgment:

---

[1] The court's opinion of November 17, 2011, did not address the applicability or merit of the state law claims.  In this regard, plaintiff alleged unidentified violations of "Article IV" of the Michigan Constitution (the constitutional article which creates the legislative branch of the State of Michigan and consists of 54 sections), and three statutes which have no relationship to the alleged misconduct: M.C.L. § 791.203 (statute authorizing the corrections commission to appoint a "director of corrections");  M.C.L. § 791.206 (statute authorizing the MDOC to promulgate rules); and  M.C.L. § 750.337 (statute regarding the use of indecent language in the presence of women and children, which was held unconstitutional in *People v. Boomer*, 250 Mich. App. 534, 655 N.W.2d 255 (2002)).  Plaintiff's state law claims are meritless.  These claims bear no relationship to his allegations against defendant Guernsey (or the other defendants) and appear to be nothing more than arbitrary citations of state law inserted in his complaint.

3

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted). "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). However, the court is not bound to blindly adopt a non-moving party's version of the facts. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

### B.     Failure to exhaust

#### 1.     Exhaustion requirement

The PLRA, 42 U.S.C. § 1997e, provides that a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must first exhaust available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516 (2002); *Booth v. Churner*, 532 U.S. 731 (2001). A prisoner must exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741. One reason for creating prisoner grievance procedures under the PLRA was to create an administrative record for the court.

> Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court. This has the potential to reduce the number of inmate suits, and also to improve the quality of suits that are filed by producing a useful administrative record.

*Jones v. Bock*, 549 U.S. 199, 204 (2007). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Id.* at 218; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218.

### 2. MDOC grievance process

The MDOC requires prisoners to follow a three-step process to exhaust grievances. *See* Policy Directive 03.02.130 (effective July 9, 2007). A prisoner must first attempt to resolve a problem with the staff member within two business days of becoming aware of the giveable issue, unless prevented by circumstances beyond his or her control. *Id.* at ¶ P. If the issue is not resolved, then the grievant may file a Step I grievance on the prescribed form within five business days after the grievant attempted to resolve the issue with appropriate staff. *Id.* at ¶¶ P and R. The Policy Directive provides the following directions for completing grievance forms:

> The issues should be stated briefly but concisely. Information provided is to be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included.

*Id.* at ¶ R (emphasis in original). The prisoner must send the Step I grievance to the appropriate grievance coordinator. *Id.* at ¶ V. If the prisoner is dissatisfied with the Step I response, or does not receive a timely response, he must request the appropriate form and send it to the Step II Grievance Coordinator. *Id.* at ¶ BB. Finally, if a prisoner is dissatisfied with the Step II response, or does not receive a timely response, he must send a completed Step III grievance, using the appropriate form, to the Grievance and Appeals Section. *Id.* at ¶ FF.

### 3.     Defendant Guernsey was not the subject of a grievance

Defendant has identified one grievance which relates to plaintiff's claim and which was exhausted through Step III of the grievance process, MTU 2011-02-1110-12a ("1110"). *See* Affidavit of Richard Russell at ¶18 (docket no. 10-2). Plaintiff does not identify any other grievances, and has himself submitted copies of Grievance 1110. *See* Grievance 1110 (docket no. 11-1). The Step I grievance form does not name any particular person, but simply refers to "dental" (i.e., "I have kited dental several times starting as long ago as June 9, 2009").[2] Plaintiff's Step I grievance states: that he is in need of dental services which have been denied for 1 1/2 years; that this violates the policy directive that he receive humane treatment; that he has serious pain affecting his eating and sleeping; and that the medications available at the prison store are not working. Grievance 1110 (docket no. 11-1 at p. 2). The Step I response provided by plaintiff is illegible. Plaintiff has provided the Step II response by former defendant Phillips, which summarized plaintiff's dental treatment history, noting that he has been on the restorative and prophylaxis list as of March 1, 2010. *Id.* (docket no. 11-1 at p. 5). Plaintiff's grievance was denied at Step III. Id. (docket no. 11-1 at p. 4). Plaintiff's grievance, which states that he has "kited dental" since June 9, 2009 does not comply with the requirement that the grievance include the "[d]ates, times, places and names of all those involved in the issue being grieved." Policy Directive 03.02.130 ¶ R. While the MDOC responded to plaintiff's grievance as one requesting dental care, nothing in the grievance identifies defendant Guernsey or the allegations made against her in plaintiff's complaint. Furthermore, there is no evidence that the MDOC construed plaintiff's vague grievance as

---

[2] The Step I grievance submitted by plaintiff is of poor quality and does not have an identifying number. *See* Step I Grievance (docket no. 11-1 at p. 2). For purposes of this report, the court will assume that this is the Step I Grievance form for Grievance 1110.

incorporating claims against defendant Guernsey. Plaintiff has failed to properly exhaust a grievance against defendant Guernsey. *Jones*, 549 U.S. at 218; *Woodford*, 548 U.S. at 90-91. Accordingly, defendant Guernsey is entitled to summary judgment on the Eighth Amendment claim.

### C.     State law claims

The remainder of plaintiff's claims against defendant Guernsey involve violations of Michigan state law. Section 1367 of Title 28 of the United States Code provides that "the district court shall have supplemental jurisdiction over all other claims that are so related to the claims in the action within such original jurisdiction that they form a part of the same case or controversy." 28 U.S.C. § 1367(a). Here, the court exercised its supplemental jurisdiction over plaintiff's state law claims, presumably because those claims were intimately related to the alleged § 1983 violation. The dismissal of plaintiff's federal claim against defendants, however, requires the court to re-examine the issue of supplemental jurisdiction for state law claims against this defendant. Section 1367(c)(3) provides that a district court may decline to exercise supplemental jurisdiction over a claim if the court "has dismissed all claims over which it has original jurisdiction." Thus, once a court has dismissed a plaintiff's federal claim, the court must determine whether to exercise, or not to exercise, its supplemental jurisdiction under § 1367. *See Campanella v. Commerce Exchange Bank*, 137 F.3d 885, 892-893 (6th Cir. 1998). As a general rule "[w]hen all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims." *Musson Theatrical, Inc. v. Federal Express Corp.*, 89 F.3d 1244, 1254-1255 (6th Cir. 1996). Here, the Court has rejected plaintiff's federal claims. There is no reason to retain supplemental jurisdiction over plaintiff's state law claims (which, as discussed in footnote 1, *supra.*,

are meritless). Accordingly, the court should dismiss all of the state law claims asserted against defendant Guernsey.

### III. Recommendation

For the reasons set forth above, I respectfully recommend that defendant Guernsey's motion for summary judgment (docket no. 9) be **GRANTED**, that the state claims alleged by defendant be **DISMISSED** pursuant to 28 U.S.C. § 1367, and that this case be **DISMISSED**.


Dated: May 31, 2012               /s/ Hugh W. Brenneman, Jr.
                                  HUGH W. BRENNEMAN, JR.
                                  United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).